# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

MARK KINKEAD,                              )
                                          )
        Plaintiff,                 )
                                          )
vs.                                        )    Case No. 08-CV-562-JHP-FHM
                                          )
TERRY DURBOROW, Ottawa County              )
Sheriff; et al.,                           )
                                          )
        Defendants.                )

## OPINION AND ORDER

This is a 42 U.S.C. § 1983 civil rights action filed by Plaintiff Mark Kinkead, a state prisoner

appearing *pro se*. Before the Court are the motions for summary judgment filed by Defendant Aleta

Fox-Smith[1] (Dkt. # 79), by Defendant Ruth Bennett (Dkt. # 83), by Defendants B. J. Floyd and

Jimmie Sooter (Dkt. # 139), and by Defendants Terry Durborow and Randall Lloyd (Dkt. # 140).

Plaintiff filed responses to each of those motions (Dkt. #s 88, 89, 143, 144). Defendant Bennet filed

a reply (Dkt. # 95) and a supplemental reply (Dkt. # 119). Defendants Floyd and Sooter filed a reply

(Dkt. # 148). Defendants Durborow and Lloyd filed a reply (Dkt. # 149). In addition, Plaintiff filed

motions for summary judgment against Defendants Durborow and Lloyd (Dkt. # 145), against

Defendants Sooter and Floyd (Dkt. # 146), against Defendant Fox-Smith (Dkt. # 150), and against

Defendant Bennett (Dkt. # 151). Defendants Durborow, Lloyd, Sooter, and Floyd filed a motion to

strike (Dkt. # 153) the motions for summary judgment filed against them by Plaintiff. Plaintiff filed

a response (Dkt. # 157). Defendants filed a reply (Dkt. # 159). Defendant Fox-Smith filed a

---

[1]    In his complaint, Plaintiff names "Aleta Smith-Fox" as a defendant. An answer (Dkt. # 56) was filed on behalf of "Aleta Smith-Fox." The motion for summary judgment (Dkt.# 79) is filed by "Aleta Fox-Smith." This Opinion and Order will refer to "Aleta Fox-Smith."

response and motion to strike Plaintiff's motion for summary judgment (Dkt. #s 154 and 156). Defendant Bennett filed a response to Plaintiff's motion for summary judgment (Dkt. # 155).

For the reasons set forth below, the Court finds that Defendants are entitled to summary judgment and their motions shall be granted. Plaintiff's motions for summary judgment shall be denied. Defendants' motions to strike shall be declared moot.

## BACKGROUND

When Plaintiff filed his complaint on September 23, 2008, he was a state inmate in custody of the Oklahoma Department of Corrections. Plaintiff states that he was transferred from the Tulsa County Jail ("TCJ") to the Ottawa County Jail ("OCJ") on October 12, 2006. See Dkt. # 1. While in custody at the OCJ, Plaintiff claims that he was not provided Prozac, the antidepressant medication he had been prescribed while at the TCJ. Plaintiff further alleges that during the evening of October 12, 2006, while at the OCJ, he was "beaten and kicked into unconsciousness twice" by five (5) fellow inmates and that he was "steadily threatened" with rape and murder by two (2) of the inmates. He states that he was refused Emergency Room medical attention, removal from the cell, and guard assistance during the night of October 12, 2006. The next morning, he was interviewed, photographed, and taken to Integris-Miami Emergency Room where he was X-rayed. He was returned to OCJ where he was placed in "some kind of solitary confinement." Plaintiff states that on October 23, 2006, he was transferred from the OCJ to the Craig County Jail ("CCJ") for his "safety." While at the CCJ, Plaintiff claims he was denied his requests for Prozac until February 2007. He also claims he was provided inadequate medical care and that while he was in custody at the CCJ, he was denied access to legal materials and out-of-cell exercise.

Based on those and other allegations concerning his convictions and sentences, Plaintiff identified five (5) claims in his complaint, as follows:

Count I: Ottawa and Craig County Supervisors, Sheriffs, jail administrators, guards/jailers, Ottawa jail medical staff Doney, Smith-Fox, Stein, and INTEGRIS Healthcare Corp, INTEGRIS-Miami ER physician Bennett, and local and corporate INTEGRIS Board of Directors, were deliberately indifferent to Plaintiff's medical needs by refusing and denying requested specialist prescribed medications and requested medical care from injuries sustained from inmate-on-inmate violence.

Count II: INTEGRIS Healthcare and ER Dr. Bennett, Ottawa County Supervisors, sheriff, guards/jailers and jail medical staff acts, omissions and conspiracies, denied Plaintiff of: protection from inmate-on-inmate violence, requests for immediate medical attention, protection from cruel and unusual punishment, follow-up medical care, free expression, access to the courts and due process.[2]

Count III: Plaintiff claims Craig County Supervisors, sheriff and jail administrator routinely denied access to available law library and legal books, preventing Mr. Kinkead from asking and obtaining proper legal guidance and authority and prevented Plaintiff from having any out-of-cell exercise time for the seven months Plaintiff was a pretrial detainee in the Craig County Jail.

Count IV: Plaintiff claims Defendants Ottawa County Assistant District Attorney Baird and Ottawa County Special District Judge Culver used the power of their offices, by act or omission to violate Plaintiff's civil rights, individually and conspiratorially.

Count V: Defendants, by position of authority and acts or omission, conspired to use the power of INTEGRIS' corporate standing and offices legislated for enforcing State authored Acts for Administration and Procedure, Auditing and Inspecting, and the professional association licensing and standards of attorneys, judges, medical personnel and hospitals, to deprive or increase the likelihood of Plaintiff's civil rights being violated.

---

[2] The factual allegations provided in support of Count II do not explain Plaintiff's claims that the Ottawa County Defendants violated his First Amendment right of free expression, or his right to access the courts, or his right to due process.

(Dkt. # 1). Plaintiff seeks compensatory and punitive damages, "plus the costs of this action and such other relief as the Court deems just and equitable." Id.

By Opinion and Order filed April 27, 2009, the Court dismissed Counts IV, V, and part of III, for failure to state a claim upon which relief may be granted and directed service of the remaining claims on the remaining defendants. See Dkt. # 18. By Order filed March 31, 2010 (Dkt. # 78), the Court dismissed certain Defendants based on either Plaintiff's failure to effect service or failure to state a claim. On July 8, 2010 (Dkt. # 115), other Defendants were dismiss based on Plaintiff's failure to effect timely service.

## *ANALYSIS*

### A. Summary judgment standard

The remaining Defendants and Plaintiff have filed motions for summary judgment (Dkt. #s 79, 83, 139, 140, 145, 146, 150, 151). Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 317.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

## B. Motions for summary judgment

### 1. Defendant Fox-Smith

Plaintiff claims that Defendant Fox-Smith failed to provide adequate medical care while he was in custody at OCJ and CCJ. In support of her motion for summary judgment, Defendant Aleta Fox-Smith provides her affidavit. See Dkt. # 79, Ex. A. She states that she is a physician's assistant practicing in Miami, Oklahoma. Id. She further states that in October, 2006, she worked with OCJ as an independent contractor under supervision of Dr. Jack Doney. Id. In addition, she is the mother of the victim involved in the crime to which Plaintiff pled guilty in 2003.[3] Id. For that reason, Defendant Fox-Smith informed the Ottawa County Sheriff's Office, the jail nurse and jail administrator that she could not provide care to Plaintiff due to a conflict of interest after learning that he was to be transferred to OCJ. Id. Once Plaintiff arrived at OCJ, she did not provide care to

---

[3]     The record reflects that on January 5, 2007, a Judgment and Sentence was entered against Plaintiff in Ottawa County District Court, Case No. CF-2003-41. See Dkt. # 48, Ex. 4. He was convicted on his 2003 plea of guilty to the crime of Lewd Acts Against a Child, After Former Conviction of a Felony, and sentenced to life imprisonment with all but the first 10 years suspended. Id.

Plaintiff nor was she contacted by anyone at the jail to provide care to Plaintiff. Id. Defendant Fox-Smith did not see Plaintiff during his eleven day stay at OCJ. Id. She does not have a contract with CCJ and had no knowledge of any requests by Plaintiff for medical care while he was at CCJ. Id.

In response to the motion for summary judgment filed by Defendant Fox-Smith, Plaintiff complains that he cannot refute her allegations because he was not allowed to engage in discovery to obtain such documents as her contract to provide medical care at OCJ. See Dkt. # 88. However, Defendant Fox-Smith readily admits that she worked under a contract to provide medical care at OCJ. As a result, the contract is not relevant to the civil rights claim asserted by Plaintiff in this action. Specifically, he claims that Defendant Fox-Smith failed to provide adequate medical care to him while he was incarcerated at OCJ. However, nothing in the summary judgment record suggests that Defendant Fox-Smith had any involvement with the care Plaintiff received or that she had any knowledge whatsoever of his alleged need for medical care.

To succeed on a constitutional claim for deprivation of adequate medical care, Plaintiff must demonstrate that Defendant Fox-Smith was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994). The deliberate indifference standard has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991). Plaintiff has presented nothing suggesting that Defendant Fox-Smith had any knowledge concerning his need for medical care. Furthermore, nothing in the record suggests that Defendant Fox-Smith had any knowledge concerning Plaintiff's need for medical care. As a result, Plaintiff has

failed to controvert the summary judgment evidence provided by Defendant Fox-Smith. Upon review of the summary judgment record, the Court finds that there is no genuine issue of material fact as to the involvement of Defendant Fox-Smith in the medical care provided to Plaintiff and she is entitled to judgment as a matter of law on Plaintiff's claim of inadequate medical care.

In his motion for summary judgment against Defendant Fox-Smith (Dkt. # 150), Plaintiff makes the completely unsupported statement that Defendant Fox-Smith denied requested and ordered medical treatment, medication and care for the Plaintiff. As stated above, nothing in the record suggests that Defendant Fox-Smith had any knowledge concerning Plaintiff's need for medical care. Plaintiff has failed to provide summary judgment evidence supporting his allegations. His motion for summary judgment against Defendant Fox-Smith shall be denied.

## 2. Defendant Bennett

Plaintiff asserts that Defendant Ruth Bennett failed to provide constitutionally adequate medical care. In her motion for summary judgment, Defendant Bennett states that she is a private physician working in the emergency room at a hospital owned and operated by a private entity. See Dkt. # 83. As a result, she asserts that she is entitled to summary judgment because she is not a "state actor" for purposes of § 1983. Id.

Section 1983 provides as follows:

> Every person who, **under color of any statute, ordinance, regulation, custom, or usage, of any State** or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). The emphasized language establishes that to be liable under § 1983, the defendant must have acted under color of state law (i.e., he must have been a state actor). See, e.g., Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 724-25 (1989). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United State v. Classic, 313 U.S. 299, 326 (1941)); see also Tarabishi v. McAlester Reg'l Hosp., 827 F.2d 648, 651 (10th Cir. 1987) ("The provisions of § 1983 apply only to persons who deprive others of rights secured by the Constitution or laws of the United States and who act under color of state statute, ordinance, regulation, custom or usage.") (citation omitted).

When nothing in the record suggests that a defendant is a state officer or state employee, the Court may regard that defendant as a private party. Pino v. Higgs, 75 F.3d 1461, 1465 (10th Cir. 1996) ("Nothing in the record suggests that Wolf is a state officer or state employee, and thus the district court properly considered her a private individual."). A private party's conduct is "fairly attributable to the state" for purposes of § 1983 liability if two conditions are met: "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the state is responsible. Second, the private party must have acted together with or ... obtained significant aid from state officials or engaged in conduct otherwise chargeable to the State." Id. (quoting Wyatt v. Cole, 504 U.S. 158, 162 (1992) (internal quotations and citation omitted)); see also Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982).

Nothing in the record suggests that Defendant Bennett is a state officer or employee. Thus, the Court must determine whether her actions are "fairly attributable to the state" as discussed in Pino, 75 F.3d at 1465. Nothing suggests that a state actor was in any way responsible for Dr. Bennett's decisions. See Blum v. Yaretsky, 457 U.S. 991, 1008 (1982). The decisions made by Dr. Bennett during the course of her treatment of Plaintiff were dictated by her professional training as a physician, rather than by any rule of conduct imposed by the State. Id. at 1009. The Court concludes that there is no evidence that Defendant Bennett acted "under color of state law" or that the alleged failure to provide proper medical care constituted state action. Therefore, Defendant Bennett is entitled to summary judgment with respect to Plaintiff's § 1983 claims.

In his motion for summary judgment against Defendant Bennett (Dkt. # 151), Plaintiff notes that Defendant Bennett provided treatment to him at the Miami Integris Medical Emergency Room. He complains that he was not provided follow-up care by Dr. Bennett and that discrepancies exist on the Emergency Room intake forms. As determined above, however, Dr. Bennett was not acting under color of state law when she provided medical treatment to Plaintiff. For that reason, Plaintiff's motion for summary judgment against Defendant Bennett must be denied.

### 3. Defendants Sooter, Floyd, Durborow and Lloyd

In his complaint, Plaintiff alleges that Defendants Durborow, Sheriff of Ottawa County, and Lloyd, Ottawa County Jail Administrator ("Ottawa County Defendants"), were deliberately indifferent to his medical needs by denying prescription medications and medical care for injuries allegedly sustained during inmate-on-inmate violence. See Dkt. # 1. He further alleges that these Defendants failed to protect him from inmate-on-inmate violence, were involved in conspiracies to violate his constitutional rights, and denied him "free expression" and access to courts. Id. Plaintiff

also alleges that Defendants Sooter, Sheriff of Craig County, and Floyd, Craig County Jail Administrator ("Craig County Defendants"), were deliberately indifferent to his medical needs by denying prescription medications and medical care for injuries sustained prior to his transfer to CCJ. In addition, Plaintiff complains that he was denied outdoor recreation while in custody at CCJ.

Both the Ottawa and Craig County Defendants allege that they are entitled to summary judgment based on Plaintiff's failure to exhaust administrative remedies prior to filing his civil rights complaint. The Court agrees. Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This provision applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Woodford v. Ngo, 548 U.S. 81 (2006); Booth v. Churner, 532 U.S. 731, 741 (2001). The statutory exhaustion requirement is mandatory, and this Court is not authorized to dispense with it. See Beaudry v. Corr. Corp. of America, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003). However, PLRA exhaustion is not jurisdictional. A district court may "dismiss plainly meritless claims without first addressing what may be a much more complex question, namely, whether the prisoner did in fact exhaust available administrative remedies." Woodford, 548 U.S. at 101.

In Jones v. Bock, 549 U.S. 199, 216 (2007), the Supreme Court held that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." Previously, the Tenth Circuit required inmates to sufficiently plead exhaustion of grievance proceedings, including a specific description of the administrative proceedings and outcome and/or supporting documentation. Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003), *abrogated by* Jones, 549 U.S. at 216. "[T]he failure to exhaust is an affirmative defense under the PLRA." Jones, 549 U.S. at 216. "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000). "Congress intended to save courts from spending countless hours, educating themselves in every case, as to the vagaries of prison administrative processes, state or federal" and "did not intend for courts to expend scarce judicial resources examining how and by whom a prison's grievance procedure was implemented." Concepcion v. Morton, 306 F.3d 1347, 1354 (3d Cir. 2002) (quotation omitted).

Defendants assert that Plaintiff failed to exhaust administrative remedies and that, as a result, they are entitled to summary judgment. It is undisputed that both OCJ and CCJ had written grievance procedures and it is undisputed that Plaintiff did not exhaust that procedure. Both Ottawa County and Craig County Defendants state that the jails have a specific grievance procedure which is posted and available for all inmates. See Dkt. #s 48, 49, 139, 140. In addition, Defendants state that the jails did not receive any grievances for any complaints arising from incidents or events occurring at either jail and forming the bases of the claims raised in this case. See Dkt. # 139, Ex. 1 at ¶ 15; Dkt. # 140, Ex. 1 at ¶ 25. See, e.g., Stone v. Albert, 257 Fed. Appx. 96, 100 (10th Cir.

Dec. 3, 2007) (unpublished) (noting that uncontradicted affidavit of prison records custodian was sufficient to establish that prisoner failed to exhaust administrative remedies).[4]

In response to the motions for summary judgment filed by the Ottawa County and Craig County Defendants, Plaintiff does not contest that the grievance procedures were posted at the jails or that he failed to submit grievances in compliance with the procedures. See Dkt. #s 143, 144. Instead, he states that he:

> asked for copies of requests he made to the jail administrator and sheriff, but was denied or ignored. The Plaintiff states that when he asked for the medical requests and grievance forms he was told by Ottawa County jail staff the inmate request forms sufficed for all of them. These acts and inaction by the Defendants should show, contextually, that it was a willful intent by Ottawa County officials to impede or deny the grievance procedure to the Plaintiff. So, with the continued refusal by the Defendants to offer any means for verifying and addressing his concerns, the Plaintiff took the only administrative step available. He filed a complaint to the Oklahoma Jail Inspector Division of the Oklahoma Depart. of Health. This agency is the oversight agency granted authority by the Oklahoma legislature to, *inter alia*, oversee and enforce the conditions of a county jail.

(Dkt. # 143 at 6; Dkt. # 144 at 9-10). He further admits that he "took matters into his own hands and sought out the jail's administrative agency to argue his complaints." See Dkt. # 143 at 6-7; Dkt. # 144 at 10.

Significantly, Plaintiff fails to provide either the names of the staff from whom he requested copies and/or forms or the dates of his requests. His insistence that he asked for "copies of requests he made to the jail administrator and sheriff" is not borne out by the record (at least with respect to

_____

[4]     This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

formal, written requests).[5] The record demonstrates that both Ottawa and Craig Counties provided a policy for the submission of inmate complaints. Plaintiff chose not to avail himself of remedy. Plaintiff's conclusory allegations that jail officials failed to verify his efforts by providing to him copies of his requests does not relieve him of the obligation to exhaust administrative remedies. Plaintiff's statement that he "took matters into his own hands" and decided to seek relief from the Oklahoma Department of Health does not help his case. In fact, it only reinforces the point because that action constitutes an admission that he elected not to pursue the grievance procedure provided by the jails, but opted instead to take his complaints straight to a higher level. Even if the jails' staff refused to provide copies of his requests, he was not relieved of his obligation to exhaust the administrative process available at the jails. See Booth, 532 U.S. at 734.

The Court finds that there is no genuine issue of material fact as to whether Plaintiff exhausted administrative remedies before filing this civil rights action. Because he failed to exhaust administrative remedies provided by Ottawa and Craig County Jails, the motions for summary judgment filed by the Ottawa County and Craig County Defendants shall be granted. In addition, because Plaintiff failed to exhaust administrative remedies before filing this action, he is not entitled to summary judgment against the Ottawa and Craig County Defendants. For that reason, his motions for summary judgment (Dkt. #s 145, 146) shall be denied. Defendants' motions to strike Plaintiff's motions for summary judgment (Dkt. #s 153 and 156) shall be declared moot.

Lastly, the Court observes that for the reasons discussed below, even if Plaintiff could demonstrate that administrative remedies became "unavailable" when jailers refused to provide

---

[5]    The only written request submitted by Plaintiff in either county was a Request to Staff, dated January 2, 2007, filed in Craig County requesting hair clippers. See Dkt. # 139, Ex. 1 attachment F.

copies of his written requests, see Little v. Jones, 607 F.3d 1245, 1250 (10th Cir. 2010), the Ottawa and Craig County Defendants would be entitled to summary judgment on Plaintiff's claims based on application of the governing constitutional standards to the facts as developed in the summary judgment record.

## C. Constitutional standards governing Plaintiff's claims

### 1. Individual capacity liability requires personal participation

Personal participation is an essential element of a § 1983 claim. Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976); see also Garrett v. Stratman, 254 F.3d 946, 950 n.4 (10th Cir. 2001) (noting that medical official must have "played a role in the challenged conduct" to be liable for an Eighth Amendment violation). As a result, government officials have no vicarious liability in a section § 1983 suit for the misconduct of their subordinates because "there is no concept of strict supervisor liability under section 1983." Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted). Instead, a supervisor is liable only if he is "personally involved in the constitutional violation and a sufficient causal connection . . . exist[s] between the supervisor and the constitutional violation." Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1151 (10th Cir. 2006) (quotation omitted). To establish a § 1983 claim against a supervisor, the plaintiff must show that an "affirmative link exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." Meade, 841 F.2d at 1527 (quotations and alterations omitted); accord Serna, 455 F.3d at 1151 ("[A] plaintiff must show an 'affirmative link' between the supervisor and the [constitutional] violation, namely the active participation or acquiescence of the supervisor in the constitutional violation by the subordinates." (quotation omitted)).

## 2. Official capacity liability requires policy or established custom

Claims against a government officer in his official capacity are actually claims against the government entity for which the officer works. Kentucky v. Graham, 473 U.S. 159, 167 (1985). Because section 1983 does not recognize the theory of respondeat superior as a basis for liability, in order to succeed on an official capacity claim against a county official under section 1983, a plaintiff must allege that he suffered injuries of a constitutional magnitude as the result of an official policy, custom, or practice. Monell v. Department of Social Servs., 436 U.S. 658, 690 (1978); Meade, 841 F.2d at 1529. The plaintiff may allege an action taken as a result of policy by showing that the constitutional injury resulted from the action or decision of an individual with final policy making authority with respect to the action ordered. Pembaur v. City of Cincinnati, 475 U.S. 469, 482 (1986). Plaintiff may also show a policy by demonstrating a pattern of conduct or series of acts which reasonably imply the existence of a policy or custom. See Strauss v. City of Chicago, 760 F.2d 765, 768-69 (7th Cir. 1985).

## 3. Inadequate medical care

As discussed in Part B(1) above, to state a § 1983 claim for a violation of a convicted prisoner's Eighth Amendment rights due to inadequate medical care, the prisoner must allege facts evidencing a deliberate indifference to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A pretrial detainee's right to receive adequate medical care is protected by the Fourteenth Amendment and the standard for evaluating his claim under the Fourteenth Amendment is the same. A plaintiff must allege "deliberate indifference to serious medical needs." Meade v. Grubbs, 841 F.2d 1512, 1530 (10th Cir. 1988); Garcia v. Salt Lake County, 768 F.2d 303, 307 (10th Cir. 1985).

"Deliberate indifference" is defined as knowing and disregarding an excessive risk to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 827 (1994). In Wilson v. Seiter, 501 U.S. 294 (1991), the Supreme Court clarified that the deliberate indifference standard under Estelle has two components: (1) an objective requirement that the pain or deprivation be sufficiently serious; and (2) a subjective requirement that the offending officials act with a sufficiently culpable state of mind. Id. at 298-99. Negligence does not state a claim under § 1983 for deliberate indifference to medical needs. See Green v. Branson, 108 F.3d 1296, 1303 (10th Cir. 1997). "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." Oxendine v. Kaplan, 241 F.3d 1272, 1277 n.7 (10th Cir. 2001) (internal citations and quotation marks omitted). A delay in medical care only constitutes a constitutional violation where the plaintiff can show that the delay resulted in substantial harm. Id. at 1276.

**4.  Failure to protect/conditions of confinement**

According to the Supreme Court, the Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981)). While the conditions under which a convicted prisoner is held are subject to scrutiny under the Eighth Amendment, the conditions under which a pretrial detainee is confined are scrutinized under the Due Process Clauses of the Fifth and Fourteenth Amendments. See Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). "Although the Due Process clause governs a pretrial detainee's claim of unconstitutional conditions of confinement, the Eighth Amendment standard provides the benchmark for such claims." Craig v. Eberly, 164 F.3d 490, 495 (10th Cir. 1998) (citation omitted). "The Eighth Amendment requires

jail officials to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." Id. (quotation omitted).

An inmate claiming that officials failed to insure his safety "must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834. Plaintiff must also demonstrate that the officials had a "sufficiently culpable state of mind," that is, their acts or omission arose from "deliberate indifference to inmate health or safety." Id. at 835-47 (explaining that deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other"). A prison official is not liable for unsafe conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. An official's failure to alleviate a significant or obvious risk that he should have perceived but did not, while no cause for commendation, does not constitute a violation of the Eighth Amendment. Id. at 838. Negligence on the part of prison officials does not constitute deliberate indifference. Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

## 5. Conspiracy

"Allegations of conspiracy may . . . form the basis of a § 1983 claim." Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). "However, a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants," id., and "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim," id. (quotation omitted). To

survive summary judgment on this claim, a plaintiff must present evidence raising a triable issue of fact on three elements: (1) a shared conspiratorial objective, i.e., an agreement to deprive Plaintiff of his constitutional or statutory rights; (2) concerted action; and (3) actual deprivation of rights. See Snell v. Tunnell, 920 F.2d 673, 701-02 (10th Cir. 1990). Plaintiff need not prove an express agreement among Defendants to establish a conspiracy. See id. at 702; see also Jorgenson v. Montgomery, 2008 WL 216398, * 2 (D.Colo. Jan. 4, 2008) (unpublished). However, to survive summary judgment, Plaintiff must come forward with facts instead of unsupported allegations. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

### 6. Access to courts

"The fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). Significantly, however, an inmate alleging a violation of constitutional access to the courts "must show actual injury." Lewis v. Casey, 518 U.S. 343, 349 (1996); Penrod v. Zavaras, 94 F.3d 1399, 1403 (10th Cir.1996) (per curiam) (interpreting Lewis). For example, an inmate cannot bring a constitutional access to the court claim simply because that person's prison law library is subpar. See Lewis, 518 U.S. at 351. Rather, such an inmate "must go one step further and demonstrate that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim." Id.

## D. Application of constitutional standards to Plaintiff's claims

### 1. Ottawa County Defendants Durborow and Lloyd

Plaintiff sued all Defendants in both their individual and official capacities. He has failed to demonstrate that Defendants Durborow and Lloyd personally participated in the incidents giving rise to his claims. In fact, he sued Defendant Durborow because as Sheriff, he is "responsible for what takes place in his jail." See Dkt. # 140, Ex. 2 at 114. Similarly, he sued Defendant Lloyd because as Jail Administrator, "he administers what takes place in the jail in regard to what the sheriff's policies are." Id. Those allegations are insufficient to hold Defendants Durborow and Lloyd liable in their individual capacities. As to Plaintiff's claims against Defendants Durborow and Lloyd in their official capacities, Plaintiff concedes that he knows of no policy at the OCJ which led to a violation of his constitutional rights. See Dkt. # 140, Ex. 2 at 160. Defendants would be entitled to summary judgment on Plaintiff's claims against them in their individual and official capacities.

Furthermore, Plaintiff was in custody in the OCJ for only eleven (11) days. Plaintiff has not demonstrated that any Defendant acted with a "culpable state of mind" in failing to provide Prozac or follow-up medical care during the short duration of his stay at the Ottawa County Jail. Wilson, 501 U.S. at 298-99. In addition, Plaintiff has failed to refute Defendants' summary judgment evidence concerning his claim that the Ottawa County Defendants failed to protect him from being assaulted by other inmates. The record reflects that Plaintiff was placed in protective custody when he was booked-in based on his child molestation conviction. See Dkt. # 140, Ex. 1, Ex. 2. The assaults happened during the overnight period of Plaintiff's first night at the facility. Plaintiff has presented no evidence suggesting that the jail staff knew of and disregarded an excessive risk to Plaintiff's health and safety. Farmer, 511 U.S. at 837. Nor has he demonstrated that he suffered substantial harm as a result in any delay in providing medical treatment for injuries sustained during the assaults. Oxendine, 241 F.3d at 1276. Once jailers found Plaintiff with two black eyes, he was

taken to the emergency room of the local hospital for treatment. See Dkt. # 140, Ex. 1 at ¶ 20. Nothing presented by Plaintiff supports his claim that the Ottawa County Defendants deprived him of his rights to "free exercise" and access to courts. Lastly, Plaintiff's conspiracy claim in this case is conclusory and completely lacks any supporting facts. Furthermore, there was no actual deprivation of rights. Snell, 920 F.2d at 701-02. Plaintiff's conspiracy claim would not suffice to move beyond summary judgment.

### 2. Craig County Defendants Sooter and Floyd

As to Plaintiff's claims against the Craig County Defendants, Plaintiff has failed to demonstrate that Defendants Sooter or Floyd personally participated in the incidents giving rise to his claims. He sued Defendant Sooter because as Sheriff, he is "responsible for the actions of what takes place in his jail . . . ." See Dkt. # 139, Ex. 2 at 115. Similarly, he sued Defendant Floyd "because of his administrative function within the jail." Id. at 116. Those allegations are insufficient to hold Defendants Sooter and Floyd liable in their individual capacities. As to Plaintiff's claims against Defendants Sooter and Floyd in their official capacities, Plaintiff stated that the only "policy" of the CCJ he challenged involved not being afforded outdoor exercise. Id. at 160. However, Plaintiff was in custody at the CCJ for less than six months, a relatively brief period of time that does not implicate a violation of constitutional magnitude. See Ajaj v. United States, 293 Fed. Appx. 575 (10th Cir. Sept. 15, 2008) (unpublished). As a result, Defendants would be entitled to summary judgment on Plaintiff's claims against them in their official capacities.

Furthermore, Plaintiff has failed to demonstrate that he suffered substantial harm as a result of either the 3-4 month delay before being given Prozac or any delay in providing follow-up medical care during his confinement at the CCJ. Oxendine, 241 F.3d at 1276. Because no constitutional

violation occurred in this case, the Craig County Defendants would be entitled to summary judgment on Plaintiff's claims against them in both their individual and official capacities.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.  The motion for summary judgment filed by Defendant Aleta Fox-Smith (Dkt. # 79) is **granted**.

2.  The motion for summary judgment filed by Defendant Ruth Bennett (Dkt. # 83) is **granted**.

3.  The motion for summary judgment filed by Defendants Durborow and Lloyd (Dkt. # 140) is **granted**.

4.  The motion for summary judgment filed by Defendants Sooter and Floyd (Dkt. # 139) is **granted**.

5.  Plaintiff's motions for summary judgment (Dkt. # 145, 146, 150, 151) are **denied**.

6.  Defendants' motions to strike (Dkt. #s 153, 156) are **declared moot**.

7.  This is a final order terminating this action.

8.  A separate judgment in favor of Defendants shall be entered in this matter.

DATED THIS 5th day of August, 2011.

James H. Payne
United States District Judge
Northern District of Oklahoma